Lane, O. J.
The plaintiff shows he has recovered judgment against the turnpike company, and that they have no assets Hablo to be seized on execution at law; that there are back subscriptions yet duo the company, both from individuals and from the State of Ohio; and that the company are levying tolls from persons traveling on the road, all which, he prays may be subjected to the satisfaction of this judgment. A supplemental bill charges that D. Talmadge is indebted to the ^company for tolls, which they ask to be applied to their benefit.
The defendants demur to the several claims in the bill. To that part which seeks to subject unpaid subscriptions, it is claimed the demurrer lies, from the want of sufficient certainty in pleading. The bill asserts that a great number of individuals, whose names are unknown, but whom, when discovered, they ask may be made parties, are indebted for subscription of stock, and they pray the company may set forth their names in their answer. The defendants insist this general description makes a fishing bill, which they need not answer. We do not think the objection well taken. We regard it proper practice, when the liability of the defendant is fixed, and no assets at law are forthcoming, to compel Mm to disclose his means to pay the debt, especially where the nature of the resources are pointed out by the bill, and his answers, upon such a point, specifically required. 4 Johns. Ch. 620. If it were otherwise, equitable assets would frequently escape the most searching inquiries of creditors. So much of this demurrer as relates to the form of the bill is overruled, and the company is required to sot forth the names of their debtors.
To so much of the bill as assumes to compel the state to pay arrearages of its subscription, it is plain that no answer need be made; it is enough to say the state is not, in fact, a party, and is not capable of being made a party defendant.
To this class of assets the demurrer is well taken.
To that part of the bill which pursues the right to collect toll, a plea is offered that another creditor has filed his bill in Muskingum against these defendants, that a receiver has been appointed, and the tolls already sequestered, and in the hands of a court of chancery, having jurisdiction over these assets.
Whenever a trust fund comes under the jurisdiction of a court of chancery, for management and distribution, the nature of the case renders it necessary that such tribunal should assert and *236 maintain its plenary power over the whole subject, to the exclusion of every other forum. The most usual case in which it is exemplified, is in the case of a creditor’s bill to ^settle the estate of a decedent, which brings the whole settlement of the estate within the court where filed, and all proceedings elsewhere will be restrained by injunction. 4 Johns. Ch. 631, 640.
But the same necessity submits in every case of a holder of a trust fund, to sustain the exclusive jurisdiction, for the purpose of preventing a double liability of the holder of the trust fund, and to insure its due appropriation.
The statute authorizes a creditor to institute proceedings against turnpike companies to sequester their tolls. A single suit, lawfully instituted, gives jurisdiction to the court to sequester the whole tolls, although the road passes through, and the gates may be situated in different counties; for the company is suable in the county where its functions are exercised, and its franchises may be seized by the court to whose jurisdiction it is subjected. As the court in Muskingum had power to appoint a receiver to seize its tolls, the authority of that receiver extends throughout the state, wherever it may be necessary to exercise it, and the court who appointed him will protect him in the exercise of his power. If, then, the plaintiff in that suit, in Muskingum, has secured a priority, he has drawn within the jurisdiction of that court the whole administration of the fund, which that receiver may control, until he, and those who are permitted to become parties to his suit, have exhausted the assets, or attains the objects he has sought by his bill.
It is then necessary to look to the question of priority, and determine by what it is acquired. This bill was filed first; but the decree rendered, and the receiver first appointed in the other. We think that ho whom the law first authorizes to receive the tolls should be protected in his possession, and we find the statute operates to confer this power by the decree. 40 Ohio L. 37. In the,present race between creditors, whose equities are equal, this first authority to receive, seems to us to confer the priority to the receiver of Muskingum, and that all questions of appropriation and priority must be settled in the court to which he renders -his account.
*It will be noticed that this shape of the case renders unnecessary the decision of certain questions of the most grave and *237 weighty character; such as those' relating to the priority or equality between different creditors, and the right of the state to receive one-half of the tolls collected, undiminished by any debts save those for repairs. All these questions will arise, and may be settled in that suit.
Eor present purposes, so much of the bill will bo dismissed as pursues the right to the tolls, either in the hands of Talmadge or of the company.
It will be entertained to compel answers as to those indebted to the company for unpaid stock. Order for answer and discovery.